IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| PRISON LEGAL NEWS and<br>HUMAN RIGHTS DEFENSE CENTER,<br>    Plaintiffs,<br><br>   vs.<br><br>BERKELEY COUNTY SHERIFF<br>H. WAYNE DEWITT, individually and<br>in his official capacity; CAPTAIN<br>CLIFF McELVOGUE, individually and in<br>his official capacity; LIEUTENANT<br>TONY RILEY, individually and in his<br>official capacity; JOHN DOE 1,<br>Berkeley County Detention Center<br>employee, individually and in his/her<br>official capacity; JOHN DOE 2,<br>Berkeley County Detention Center<br>employee, individually and in his/her<br>official capacity; JOHN DOE 3,<br>Berkeley County Detention Center<br>employee, individually and in his/her<br>official capacity; JOHN DOE 4,<br>Berkeley County Detention Center<br>employee, individually and in his/her<br>official capacity,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.:<br><br><br><br><br><br><br><br><br>**COMPLAINT**<br>**(JURY TRIAL REQUESTED)** |

## NATURE OF THE CASE

1. This suit, brought under 42 U.S.C. § 1983, is a First and Fourteenth Amendment challenge to censorship policies of the Berkeley County Detention Center (the "Detention Center"). Such policies prevent every newspaper, magazine, and book – except the Bible – from entering the Detention Center. Without any notice to senders, the Detention Center routinely refuses to deliver these expressive works to detainees.

1

2. Plaintiff Prison Legal News is the publisher of a monthly journal on prison law distributed across the nation to prisoners, attorneys, judges, law libraries, and other subscribers. Prison Legal News is also a book distributor, specializing in books and materials regarding prisoners' rights and issues related to the criminal justice and corrections systems.

3. The Detention Center has routinely violated the rights of Prison Legal News under the Speech, Establishment, and Due Process Clauses of the First and Fourteenth Amendments by censoring and failing to deliver multiple copies of journals and books sent to detainees by Prison Legal News. Defendants have also unlawfully refused to deliver letters sent by Prison Legal News to detainees.

## JURISDICTION AND VENUE

4. This action is brought pursuant to 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

5. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(a)(3).

6. Venue in this Court is proper under 28 U.S.C. § 1391, as the events complained of occurred within this district.

## PARTIES

7. Plaintiff Prison Legal News is a wholly-owned subsidiary of Plaintiff Human Rights Defense Center, a Washington State, non-profit, tax exempt (IRS section 501(c)(3)) corporation. The headquarters, business office, and editorial office of the Human Rights Defense Center and Prison Legal News are located in West Brattleboro, Vermont.

8. Prison Legal News and the Human Rights Defense Center publish and distribute a monthly 56-page legal information journal entitled *Prison Legal News*, which deals with the rights of incarcerated persons. The publication provides information about legal issues such as

access to courts, disciplinary hearings, prison conditions, excessive force, mail censorship, prison and jail litigation, visitation, telephones, religious freedom, prison rape, and the death penalty. *Prison Legal News* has been published continuously since 1990. *Prison Legal News* has approximately 7,000 subscribers nationwide, including subscribers in all 50 states.

9.      Plaintiffs also distribute approximately 45 legal and self-help books, some published by Plaintiffs and some by other publishers, regarding the criminal justice system. These books are designed to foster a better understanding of criminal justice policies and to allow prisoners to educate themselves about related issues, such as legal research, how to write a business letter, health care issues, and similar topics.

10.     Prisoners and detainees account for approximately 65% of subscribers to *Prison Legal News*. Prison Legal News is funded primarily by subscription and advertising revenue, book sales, and individual donations.

11.     Prison Legal News relies upon its ability to send books, magazines, and letters to prisoners and detainees in order to create and maintain business relationships with subscribers and advertisers.

12.     Defendant H. Wayne DeWitt is, and has been at all times relevant to this litigation, the Sheriff of Berkeley County, South Carolina. Defendant DeWitt establishes, maintains, and enforces policies and procedures for the Detention Center and has responsibility for all Detention Center employees, agents, and operations. He is the final policymaker for the Berkeley County Detention Center and the Berkeley County Sheriff's Office.

13.     Captain Cliff McElvogue serves as Director of the Detention Center. After Defendant McElvogue, Lieutenant Tony Riley is second in command of the Detention Center. Defendants

McElvogue and Riley establish, maintain, and enforce Detention Center policies and procedures and have responsibility for Detention Center operations, agents, and employees.

14. Defendants DeWitt, McElvogue, and Riley established, maintained, and enforced the policies at issue in this action.

15. John Doe Defendants 1, 2, 3, and 4 handle incoming mail sent to detainees at the Detention Center and are charged with processing mail and determining whether to deliver, return, or destroy such mail.

16. The Berkeley County Sheriff's Office, which is headed by Defendant DeWitt, is a political subdivision of the State of South Carolina. The Berkeley County Detention Center is a component of the Berkeley County Sheriff's Office. At all relevant times mentioned herein, all Defendants were employees or administrators of the Berkeley County Sheriff's Office and/or the Berkeley County Detention Center. All actions by Defendants alleged herein occurred under color of State law for purposes of 42 U.S.C. § 1983.

17. All Defendants are sued individually and in their official capacities.

18. On information and belief, all Defendants are residents of the District of South Carolina.

## FACTUAL ALLEGATIONS

**A.    Censorship of Books and Magazines**

    **1.    The Detention Center's Censorship Policy**

19. The Detention Center's written policy on inmate mail bans *all* publications sent by mail to detainees. A true and correct copy of the written policy is attached hereto as Exhibit A. The policy provides:

> The only mail allowed to be received by inmates are letters only. No packages are accepted at the Detention Center. The only exception to this is pictures. Inmates may receive three (3) pictures but they cannot be Polaroid.

20.     The Detention Center has a policy and practice of allowing detainees to order from a publisher, and receive by mail, a soft-cover Bible – but no other books, magazines, or newspapers.  On July 12, 2010, First Sergeant K. Habersham, Berkeley County Detention Center, sent the following email to Paul Wright, Editor, Prison Legal News:

> Our inmates are only allowed to receive soft back bibles in the mail directly from the publisher. They are not allowed to have magazines, newspapers, or any other type of books.

21.     A true and correct copy of the email is attached hereto as Exhibit B.

22.     These policies, including the written ban on all publications sent by mail and the effective ban on all books and publications except the Bible, were established, maintained, and enforced by Defendants DeWitt, McElvogue, and Riley.

       **2.     Rejection of Books and Magazines**

23.     Defendants have refused to deliver every book and every magazine that Plaintiffs have sent to detainees at the Detention Center.  Since 2008, Plaintiffs have sent copies of *Prison Legal News* to at least nine detainees and books to at least three detainees.  The publications often have been returned to sender, and Plaintiffs have never received any confirmation that a publication was delivered.

24.     Among the books sent by Plaintiffs but rejected by the Detention Center was *Protecting Your Health & Safety*.  Prison Legal News distributes *Protecting Your Health & Safety* under a contract with the Southern Poverty Law Center, which publishes the book.  The Southern Poverty Law Center's website describes *Protecting Your Health and Safety* as follows: "Designed to help inmates who are not represented by an attorney, *Protecting Your Health & Safety* explains the legal rights inmates have regarding health and safety – including the right to medical care and to be free from inhumane treatment."

25.    Acting pursuant to policies established, maintained, and enforced by Defendants DeWitt, McElvogue, and Riley, John Doe Defendants 1-4 refused to deliver issues of books and magazines sent by Plaintiffs, returning or discarding such materials.

26.    The ban on publications also prevents Plaintiffs from sending to detainees the *Prisoners' Self-Help Litigation Manual*, a book published by Oxford University Press and distributed by Plaintiffs. Widely used by prisoners and attorneys who represent prisoners, the book is described by Oxford University Press as an "indispensable guide for prisoners and prisoner advocates seeking to understand the rights guaranteed to prisoners by law and how to protect those rights. Clear, comprehensive, practical advice provides prisoners with everything they need to know on conditions of confinement, civil liberties in prison, procedural due process, the legal system, how to litigate, conducting effective legal research, and writing legal documents."

27.    *Prison Legal News*, and the books distributed by Plaintiffs that the Detention Center prohibits, constitute core protected speech, which is not objectionable on security or any other grounds. All of the books sent by Plaintiffs to detainees at the Detention Center had soft covers. All of the copies of *Prison Legal News* sent to detainees at the Detention Center had soft cover-pages and no covers.

   **3.    Effects of the Publication Ban**

28.    The Detention Center does not have a library to provide detainees access to reading materials.

29.    The combination of the ban on incoming publications and the lack of a library means that detainees have no access to any sort of magazine, newspaper, or book, other than the Bible, while at the Detention Center.

30. Many detainees are held at the Detention Center – and thus deprived of all access to magazines, newspapers, and books, other than the Bible – for months or years on end.

31. For example, on July 22, 2010, a date picked at random, at least 182 current detainees had been held at the Detention Center for 60 days or more; at least 128 current detainees had been held at the Detention Center for 120 days or more; at least 57 current detainees had been held at the Detention Center for over one year; and at least 18 current detainees had been held at the Detention Center for over two years.

32. Several of these long-term detainees have requested books and issues of *Prison Legal News* from Plaintiffs. For example, at least one detainee who requested such expressive materials from Plaintiffs has been held at the Detention Center for over one year and two months, and remains at the Detention Center to this day. Another detainee who requested expressive materials from Plaintiffs remained at the Detention Center for over one year and three months. Yet another detainee who requested such materials from Plaintiffs was held at the Detention Center for over seven months.

33. Numerous detainees to whom Plaintiffs sent books and issues of *Prison Legal News* had specifically requested that Plaintiffs send them such expressive works.

34. Detainees at the Detention Center have filed grievances regarding the publications ban. Detention Center officials have rejected such grievances.

**B.    Censorship of Letters**

35. John Doe Defendants 1-4 refused to deliver letters sent by Plaintiffs to Detention Center detainees, returning or destroying such letters.

36. Since 2008, Defendants have returned to sender at least six letters that Plaintiffs sent to Detention Center detainees.

37.     Plaintiffs sent all of these rejected letters via First Class mail.

38.     Notations written by John Doe Defendants 1-4 on returned letters include "Magazines Not Allowed." Such notations indicate that the Detention Center's publication ban, established, maintained, and enforced by Defendants DeWitt, McElvogue, and Riley, extends in practice to letters sent by magazine publishers. John Doe Defendants 1-4 were acting pursuant to that policy when they refused to deliver letters sent by Plaintiffs.

**C.      Denial of Notice and Review**

39.     The Detention Center's written policies, established, maintained, and enforced by Defendants DeWitt, McElvogue, and Riley, permit Detention Center staff to reject books, magazines, and letters sent to detainees without providing the publisher or the detainee with adequate notice of the rejection or any opportunity to challenge the rejection. Such policies do not contain any reference to notice or an opportunity to be heard, or even a requirement that Detention Center staff return censored items to the sender. *See* Ex. A.

40.     In most cases, Defendants have refused to deliver materials from Plaintiffs without even returning the materials to sender. In such cases, Plaintiffs have received from Defendants absolutely no notice of rejection.

41.     In other cases, the Detention Center has returned to Plaintiffs books, magazines, and letters, but Defendants in so doing consistently fail both to specify a meaningful basis for rejection and to provide an opportunity to challenge the rejection. This lack of notice and an opportunity to be heard results from the failure of Defendants DeWitt, McElvogue, and Riley to include any notice requirements in the Detention Center's written policies. John Doe Defendants 1-4 have written vague and conclusory reasons for rejection – such as "Can not have," "Info not

allowed," "Not allowed," "Book Not Allowed," and "Magazines Not Allowed" – on returned copies of *Prison Legal News,* letters, and packages containing books.

42.     Defendants reject letters and publications without any notice or without adequate notice and without an opportunity to be heard when Plaintiffs send materials both via First Class Mail and via Standard Mail.

43.     Plaintiffs have never received any notice from Defendants of procedures available to a sender to challenge the rejection of a book, magazine, or letter.  Such lack of review procedures applies to items sent via both Standard and First Class Mail.

## FIRST CAUSE OF ACTION

### Censorship of Books and Magazines
### Freedom of Speech (First Amendment)
### Injunctive and Declaratory Relief

44.     Plaintiffs have a First Amendment right to communicate with detainees at the Detention Center, including the right to send detainees books and magazines.

45.     Detention Center policies, established, maintained, and enforced by Defendants DeWitt, McElvogue, and Riley, prevent detainees from receiving all books, newspapers, and magazines sent by mail, with the exception of the Bible.  Such policies were carried out by John Doe Defendants 1-4, who refused to deliver books and magazines sent by Plaintiffs to detainees.

46.     Such policies, both facially and as applied to Plaintiffs, violate the free speech and expression rights of Plaintiffs, guaranteed by the First and Fourteenth Amendments to the United States Constitution.

47.     In establishing such policies and refusing to deliver books and magazines sent by Plaintiffs, Defendants acted under color of state law for purposes of 42 U.S.C. § 1983.

48. A valid, rational connection does not exist between Defendants' policy and practice of banning books and magazines and any legitimate governmental or penological interest.

49. Defendants' policy and practice of banning books and magazines does not leave alternative means of communication open to detainees or publishers.

50. Accommodating Plaintiffs' right to send books and magazines to detainees will not have a significant impact on guards, other detainees, or the allocation of resources.

51. There is no absence of ready alternatives to the Detention Center's policy of banning books and magazines sent by mail. The Detention Center's publications ban is an exaggerated response in light of obvious alternatives, including, for example, a "publishers only" rule, individualized determinations of whether publications will create security concerns, limiting the volume of written material detainees may receive by mail, and taking disciplinary action against detainees who abuse their access to publications.

52. Defendants' conduct set forth herein constitutes an ongoing violation of Plaintiffs' rights under the First and Fourteenth Amendments, subjecting them to irreparable harm and entitling them to injunctive relief.

## SECOND CAUSE OF ACTION

**Censorship of Letters
Freedom of Speech (First Amendment)
Injunctive and Declaratory Relief and Compensatory and Punitive Damages**

53. Plaintiffs have a First Amendment right to communicate with detainees, including the right to send detainees letters.

54. Detention Center policies, established, maintained, and enforced by Defendants DeWitt, McElvogue, and Riley, prevent Plaintiffs from sending letters to detainees. Such policies were

carried out by John Doe Defendants 1-4, who refused to deliver letters sent by Plaintiffs to detainees.

55.    Such policies, both facially and as applied to Plaintiffs, violate the free speech and expression rights of Plaintiffs, guaranteed by the First and Fourteenth Amendments to the United States Constitution.

56.    In refusing to deliver letters sent by Plaintiffs, Defendants acted under color of state law for purposes of 42 U.S.C. § 1983.

57.    A valid, rational connection does not exist between the refusal to deliver Plaintiffs' letters and any legitimate governmental or penological interest.  None of the letters sent by Plaintiffs and censored by Defendants could rationally be perceived as a threat to security or Detention Center administration.

58.    Defendants' refusal to deliver Plaintiffs' letters does not leave alternative means of communication open to detainees or Plaintiffs.

59.    Accommodating Plaintiffs' right to send letters to detainees will not have a significant impact on guards, other detainees, or the allocation of resources.

60.    There is no absence of ready alternatives to the Detention Center's refusal to deliver Plaintiffs' letters.  The Detention Center's rejection of Plaintiffs' letters is an exaggerated response in light of obvious alternatives, including, for example, only refusing to deliver those letters that pose a risk to security, limiting the volume of correspondence that detainees may receive, and taking disciplinary action against detainees who abuse their access to mail.

61.    Defendants are not entitled to qualified immunity because their refusal to deliver Plaintiffs' letters violates clearly established constitutional law.

62. Plaintiffs have suffered damages as a result of the Detention Center's rejection of letters, including violation of constitutional rights; loss of potential subscribers and customers; loss of subscription, sales, and advertising revenue; loss of reputation; costs of printing, handling and mailing materials; costs of staff time; and other damages to be shown at trial.

63. Punitive damages are warranted as to this claim because each Defendant's conduct was motivated by evil motive or intent, involved reckless or callous indifference to the federally protected rights of Plaintiffs, intentionally violated federal law, or involved ill will, a desire to injure, and malice. Defendants' conduct is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards.

64. Defendants' conduct set forth herein constitutes an ongoing violation of Plaintiffs' rights under the First and Fourteenth Amendments, subjecting them to irreparable harm and entitling them to injunctive relief.

## THIRD CAUSE OF ACTION

**Discriminatory Censorship of Books, Magazines, and Letters on the Basis of Religion
Establishment Clause (First Amendment)
Injunctive and Declaratory Relief and Compensatory and Punitive Damages**

65. Defendants have a policy of prohibiting detainees from receiving in the mail any publications or books other than the Bible. Such policy was established, maintained, and enforced by Defendants DeWitt, McElvogue, and Riley, and carried out by John Doe Defendants 1-4, who refused to deliver books, magazines, and letters sent by Plaintiffs to detainees.

66. Such policy discriminates against Plaintiffs on the basis of religion and violates the Establishment Clause of the First Amendment. The books, magazines, and letters that Plaintiffs send to incarcerated persons are secular in nature and pose no threat to Detention Center security.

67. There is no rational, non-discriminatory reason to differentiate between the Bible and the

books and magazines sent by Plaintiffs. There is likewise no rational, non-discriminatory reason to differentiate between the Bible and letters sent by Plaintiffs.

68. Defendants' policy of banning all publications other than the Bible, and refusing to deliver Plaintiffs' letters, violates the Establishment Clause, both facially and as applied to Plaintiffs.

69. In banning all publications other than the Bible, and refusing to deliver Plaintiffs' letters, Defendants acted under color of state law for purposes of 42 U.S.C. § 1983.

70. In banning all publications other than the Bible, and refusing to deliver Plaintiffs' letters, Defendants violated clearly established constitutional law and therefore are not entitled to qualified immunity.

71. Plaintiffs have suffered damages as a result of the Detention Center's policy of banning all publications other than the Bible, including violation of constitutional rights; loss of potential subscribers and customers; loss of subscription, sales, and advertising revenue; loss of reputation; costs of printing, handling and mailing materials; costs of staff time; and other damages to be shown at trial.

72. Punitive damages are warranted as to this claim because each Defendant's conduct was motivated by evil motive or intent, involved reckless or callous indifference to the federally protected rights of Plaintiffs, intentionally violated federal law, or involved ill will, a desire to injure, and malice. Defendants' conduct is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards.

73. Defendants' conduct set forth herein constitutes an ongoing violation of Plaintiffs' rights under the First and Fourteenth Amendments, subjecting them to irreparable harm and entitling them to injunctive relief.

## FOURTH CAUSE OF ACTION

### Rejection of Books, Magazines, and Letters without Notice to Plaintiffs
### Due Process and Freedom of Speech (First and Fourteenth Amendments)
### Injunctive and Declaratory Relief and Compensatory and Punitive Damages

74. Plaintiffs have a constitutionally-protected liberty interest in sending expressive materials, including books, magazines, and letters, to detainees at the Detention Center. Plaintiffs have a right, under the First Amendment and the Due Process Clause of the Fourteenth Amendment, to receive notice and an opportunity to be heard when Defendants prevent Plaintiffs' expressive materials from reaching their intended recipients.

75. Defendants have a policy of failing to provide adequate notice or an opportunity to be heard when books, letters, and magazines sent to detainees are returned or rejected. Such policy was established, maintained, and enforced by Defendants DeWitt, McElvogue, and Riley, and carried out by John Doe Defendants 1-4, who failed to provide notice or an opportunity to be heard when they refused to deliver books, magazines, and letters sent by Plaintiffs.

76. In refusing to provide notice and an opportunity to be heard to Plaintiffs under such policy and practice, Defendants acted under color of state law for purposes of 42 U.S.C. § 1983.

77. Defendants' policy and practice violates Plaintiffs' right to notice and an opportunity to be heard under the First and Fourteenth Amendments.

78. In refusing to provide notice to Plaintiffs, Defendants violated clearly established constitutional law and therefore are not entitled to qualified immunity.

79. Plaintiffs have suffered damages as a result of the Detention Center's policy and practice of denying notice and an opportunity to be heard, including violation of constitutional rights; loss of potential subscribers and customers; loss of subscription, sales, and advertising revenue; loss

of reputation; costs of printing, handling and mailing materials; costs of staff time; and other damages to be shown at trial.

80. Punitive damages are warranted as to this claim because each Defendant's conduct was motivated by evil motive or intent, involved reckless or callous indifference to the federally protected rights of Plaintiffs, intentionally violated federal law, or involved ill will, a desire to injure, and malice. Defendants' conduct is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards.

81. Defendants' conduct set forth herein constitutes an ongoing violation of Plaintiffs' rights under the First and Fourteenth Amendments, subjecting them to irreparable harm and entitling them to injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court:

1. Issue a declaratory judgment that Defendants' policies of banning all publications and books other than the Bible, refusing to deliver letters from Plaintiffs to Detention Center detainees, and failing to provide Plaintiffs with notice and an opportunity to be heard violate the First and Fourteenth Amendments to the United States Constitution;

2. Issue a permanent injunction barring enforcement of such policies;

3. Award compensatory and punitive damages against the Defendants in their individual capacities on the Second, Third, and Fourth Causes of Action set forth herein;

4. Grant Plaintiffs their reasonable attorneys' fees, litigation expenses, and court costs pursuant to 42 U.S.C. § 1988 and other applicable law; and

5. Grant all other appropriate relief.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable in this matter.


Pursuant to Local Rule 3.01(B), undersigned counsel hereby endorses and certifies that this action is properly assigned to the Charleston Division.

Respectfully submitted,

ATTORNEYS FOR PLAINTIFFS

_____s/Susan Dunn_____

Susan Dunn
Federal Bar No. 647
Staff Attorney
South Carolina National Office of the ACLU
P.O. Box 20998
Charleston, SC 29413-0998
(843) 720-1425
Fax: (843) 720-1428
sdunn@aclu.org

David M. Shapiro, admission *pro hac vice* pending
dshapiro@npp-aclu.org
David C. Fathi,* admission *pro hac vice* pending
dfathi@npp-aclu.org
ACLU National Prison Project
915 15th St., N.W., 7th Floor
Washington, DC  20005
(202) 715-0838
Fax: (202) 393-4931
*Not admitted in DC; practice limited to federal courts*

Lance Weber, admission *pro hac vice* pending
Human Rights Defense Center
P.O. Box 2420
West Brattleboro, VT  05303
(802) 579-1309
Fax: (866) 735-7136
lweber@humanrightsdefensecenter.org